# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAYRIYE BERIL GOK <br><br> v. <br><br> ROMAN CATHOLIC CHURCH, et al. | CIVIL ACTION <br><br> NO. 20-4817 |
| HAYRIYE BERIL GOK <br><br> v. <br><br> POST & SCHELL, PC, et al. | CIVIL ACTION <br><br> NO. 20-4968 |

**MEMORANDUM RE: DEFENDANTS' MOTIONS TO DISMISS**

## I. INTRODUCTION

DATED: 4/30/2021

Currently before the Court are Plaintiff's Second Amended Complaints, filed in both cases on February 26, 2021.[1] The Court will summarize the allegations of violations of federal law in both cases, which serve as the jurisdictional basis for filing in federal court. Plaintiff also relies on state law claims. Plaintiff identifies herself as a medical doctor who previously worked as a resident at Mercy Catholic Medical Center ("Mercy") from 2011 until she was terminated in 2015. (Compl. 4, ECF 109, Dkt. No. 20-4968). At a general level, both Complaints allege various illegal actions taken by lawyers, doctors, and hospital executives during previous litigation that challenged her termination from Mercy's residency program.

Plaintiff's Second Amended Complaint against the Roman Catholic Church (Dkt. No. 20-4817) focuses on her perception that Mercy doctors and supervisors had manipulated or falsified her residency evaluations to make her performance seem worse than it was, leading to her

---

[1] To date, Plaintiff submitted three Complaints in both cases (an original, an Amended, and a Second Amended).

termination. (Second Am. Compl. 5, ECF 58, Dkt. No. 20-4817). Plaintiff named twelve (12) Defendants, including the Philadelphia RCC diocese, two Trinity Health entities, and various doctors and executives who work at Trinity Health and Mercy.

That Complaint ("the RCC case") contains eleven (11) counts: for (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) violations of the Sherman Act; (3) violations of the Clayton Act; (4) intentional interference with a contractual relationship; (5) breach of contract; (6) unjust enrichment; (7) fraud; (8) defamation; (9) violations of the Pennsylvania Crimes Code; (10) violations of procedural and substanti[ve][2] due process; and (11)[3] intentional infliction of emotional distress.

Plaintiff's Second Amended Complaint against the Post & Schell Defendants (Dkt. No. 20-4968) centers around her belief that attorneys in her previous lawsuit—on both Plaintiff's and Defendants' side—committed various professional wrongdoings during the course of her previous employment litigation. (Second Am. Compl. 5–8, ECF 109, Dkt. No. 20-4968.) Plaintiff named twelve (12) Defendants, who were all lawyers or law firms involved in some way with her prior case.

That Complaint ("the P&S case") contains ten (10) counts: for (1) RICO; (2) legal/professional malpractice in violation of 41 Pa. Con. Stat. § 5524; (3) breach of contract; (4) unjust enrichment; (5) fraud; (6) abuse of process; (7) defamation; (8) violations of procedural and substanti[ve][4] due process; (9) violations of the Pennsylvania Crimes Code; (10) intentional and negligent infliction of emotional distress.

---

[2] The Court makes a correction in brackets for precision. The Plaintiff's Amended Complaint refers to "substantial" due process, which the Court assumes is an error.
[3] Plaintiff's Complaint misnumbers this as Count X.
[4] The Court makes a correction in brackets for precision. The Plaintiff's Amended Complaint refers to "substantial" due process, which the Court assumes is an error.

### A. Procedural History

Plaintiff commenced these actions pro se on September 28, 2020 (against the RCC) and on October 7, 2020 (against P&S et al.). Plaintiff proceeded to file several voluminous motions and Amended Complaints—often in violation of the Federal Rules of Civil Procedure, the Eastern District of Pennsylvania's Local Rules, and the undersigned's published practice requirements. Defendants opposed many of Plaintiff's motions and filed Motions to Dismiss. In both cases, on December 22, 2020, and again on January 27, 2021, this Court struck Plaintiff's Complaints and Amended Complaints, respectively, without prejudice, due to Plaintiff's failure to follow the Federal Rules of Civil Procedure. This Court also denied all open motions without prejudice. In its Order dated December 22, 2020, the Court urged Plaintiff to secure representation by an attorney in both cases and referred her to this district's Employment Attorney Panel for pro se plaintiffs. However, Plaintiff continues pro se.

### B. Background

As mentioned above, both cases arise from prior litigation in this Court. Plaintiff Gok has identified herself as Plaintiff Jane Doe in Doe v. Mercy Catholic Medical Center, 158 F. Supp. 3d 256 (E.D. Pa. 2016) (Baylson, J.), aff'd in part and rec'd in part by 850 F.3d 545 (3d Cir. 2017). In Doe, Plaintiff sued Mercy alleging sex discrimination in violation of Title IX and Pennsylvania state law. She alleged that the director of Mercy's residency program sexually harassed her and then retaliated against her—causing her termination—when she complained about his actions. (Id. at 258.) Defendant moved to dismiss, and this Court granted dismissal on the grounds that, as a matter of first impression in the Third Circuit, Title IX did not apply to Mercy's medical residency program. See id. at 257. Plaintiff appealed.

On appeal, the Third Circuit affirmed in part and reversed in part. The Court held that Mercy's residency program was an "education program or activity" under Title IX. See Doe, 850 F.3d 545, 556, 560, 566 (holding Plaintiff's claims for retaliation and quid pro quo harassment under Title IX were not barred but that her Title IX hostile environment claim was). Because Plaintiff's two Title IX claims could proceed, the Third Circuit also reversed the dismissal of her state law claims and remanded for consideration of supplemental jurisdiction. Id. at 567.

On remand, Plaintiff ultimately withdrew her state law claims. (See ECF 52, Dkt. No. 15-2085.) After a contentious discovery process, Mercy moved for summary judgment on the remaining counts—Title IX retaliation and harassment—which the Court granted. See Doe v. Mercy Catholic Med. Ctr., No. 15-2085, 2019 WL 3243249 (E.D. Pa. July 17, 2019) (Baylson, J.). Applying the burden-shifting framework from McDonnell Douglas,[5] this Court found that Plaintiff did not meet her burden of showing that Mercy's proffered reasoning was pretextual. Id. at 14–15. The Court also ruled that, based on the "scarce" factual record, a reasonable jury would not be able to find that Plaintiff met her burden of proof of causation between the alleged harassment and subsequent termination by Mercy. Id. at 15–16. Accordingly, the Court entered judgment for Mercy on this count as well. Id. at 16.

Plaintiff appealed the entry of summary judgment for defendants. (ECF 137, Dkt. No. 15-2085.) The Third Circuit initially dismissed the appeal for Plaintiff's failure to timely prosecute,

---

[5] See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801–803 (1973); see also Young v. St. James Mgmt., LLC, 749 F. Supp. 2d 281, 288–89 (E.D. Pa. 2010) (Brody, J.) ("If a plaintiff successfully establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its decision. If the defendant succeeds, the burden returns to the plaintiff to show that the employer's stated reason for termination was merely a pretext for intentional discrimination." (citation omitted)).

4

(ECF 145), but later considered on the merits, and affirmed. (ECF 150; Doe v. Mercy Catholic Med. Ctr., No. 19-2734, 2021 WL 1157190 (3d Cir. Mar. 25, 2021).)

It is important that Plaintiff's current claims stem from perceived wrongdoings throughout that litigation.

## II. PLAINTIFF'S FEDERAL CLAIMS

In the RCC Case, Plaintiff alleges federal claims under the Racketeer Influenced and Corrupt Organizations ("RICO"), the Sherman Act and the Clayton Act, both of which concern antitrust claims. In the claim against P&S, et al., Plaintiff only claims federal jurisdiction under RICO.

### A. Allegations against the Roman Catholic Church (20-4817)

#### 1. RICO

##### i. Amended Complaint

In the Amended Complaint, Plaintiff alleges that the following actions are "racketeering activity" under § 1961 of the RICO Act. First, that the RCC and the other Defendants facilitated the falsification and manipulation of documents to be used in a court proceeding. Second, that the RCC used intimidation, threats, and corrupt persuasion against witnesses at the court proceeding. Third, that the RCC bribed employees from Mercy to manipulate the documents, bribed attorneys from P&S to submit the documents into evidence, and bribed Gok's attorneys to prevent them from raising the issue of falsified documents to the Court. (Am. Compl. 6, ¶¶ 31–33.)

The RICO count refers to the RCC as an enterprise. Plaintiff states that as a result of racketeering activity, the RCC acquired "interest in control of an enterprise engaged in activities that affect interstate commerce," via a merger between Catholic Health East (the corporate parent of Mercy) and Trinity Health hospital systems. (Id. at ¶ 35.)

5

Plaintiff then goes on to allege that the merged Mercy-Trinity entity continued to participate in racketeering activity when its employees[6] submitted falsified evidence to the court during her employment case. (Id. at 6–7, ¶¶ 36–39.)

## ii. Second Amended Complaint

In the current, Second Amended Complaint, Plaintiff's allegations are lengthier. It appears that the substance of her claim remains similar, but that she has included several pages worth of information on the merger between Mercy and Trinity, and on the Roman Catholic Church as an organization. (Second Am. Compl. 21–25, ¶¶ 190–213.)

Plaintiff goes into more detail about RICO enterprises. She states that the RCC, Archdiocese of Philadelphia, and Trinity health participated in two different enterprises: one engaged in or affecting interstate health care commerce, and one engaged in or affecting legal commerce. (Id. at 25–26, ¶ 216–19.)

Plaintiff's claim still centers around her belief that allegedly falsified documents were submitted to the Court in order to protect the merger between Catholic Health East and Trinity Health. (Id. at 26–27, ¶ 223–25.) She adds that crimes such as mail fraud and wire fraud also took place when these entities provided information to various government offices. (Id. at 26–28, ¶ 224, 226–33.)

## 2. Sherman & Clayton Acts

### i. Amended Complaint

Plaintiff alleges a combined Sherman Act and Clayton Act claim against the RCC. In her Amended Complaint, she states that around the time she was allegedly forced to resign, Catholic

---

[6] Plaintiff names as Defendants Dr. Teytelboym, Dr. Chan, Dr. Eiser, Dr. Reza Hayeri, John Cigler, Pam Fierro, Cathy Mikus, and Mike Slubowski.

6

Health East announced a merger with Trinity Health. (Am. Compl. 9, ¶ 60.) She conclusively states that the merger was in violation of "established Antitrust laws," including the Sherman and Clayton Acts, and was the reason behind the "retaliation and submission of falsified evidence" that she alleges. (Id. at 10, ¶ 66–67.)

## ii. Second Amended Complaint

The Second Amended Complaint breaks Plaintiff's antitrust claims into a separate count for each statute.

In the count alleging a violation of the Sherman Act, Plaintiff includes statements about market forces, competition, and consolidation in the hospital industry. (Second Am. Compl., 33–38, ¶¶ 267–98.) She alleges that the allegations of sexual harassment in her prior lawsuit "provided justification for the parties involved in the merger [between Mercy and Trinity] to facilitate" the use of falsified documents and testimony before the Court. (Id. at 38–39, ¶ 302.) The formation of the merger resulted in a "monopoly" that "directly injure[d] Gok's business and property." (Id. at 40, ¶ 313–14.) Plaintiff then concludes that Defendants violated Section 1 of the Sherman Act by "contracts, combinations, and conspiracies that unreasonably restrain trade," and violated Section 2 of the Act by monopolization of "trade or commerce." (Id. at 41, ¶¶ 323–34.)

In this count, Plaintiff alleges that the Trinity and Mercy merger "substantially lessened" competition in the healthcare industry and created a monopoly. (Id. at 42, ¶ 328). Similar to her Sherman Act claim, Plaintiff claims that her sexual harassment lawsuit would have interfered with the hospitals' plans to merge, and she was consequently retaliated against. (Id. at 42–43, ¶¶ 335, 337.) She suffered harm to her reputation and took a pay cut because she was not able to obtain a board certification. (Id. at 43, ¶¶ 339–42.) She alleges that Sections 4 and 7 of the Clayton Act

were violated when the RCC used its market power–gained from an anticompetitive merger—to injure Plaintiff's business and property. (Id. at 44–45, ¶¶ 344–54.)

### B. Allegations against Post & Schell (20-4968)

The only federal claim Plaintiff alleges against P&S is under RICO.

#### 1. Amended Complaint

Plaintiff's claim here is the same as in her Amended Complaint against the RCC. She adds that the attorneys[7] involved with the prior litigation, "as persons employed by or associated with an enterprise engaged in or affecting interstate commerce, participated in racketeering activity" by submitting falsified documents to the Court and providing false testimony in Court proceedings. (Am. Compl. 12, ¶ 71, ECF 104.)

#### 2. Second Amended Complaint

As in the Second Amended Complaint against the RCC, Plaintiff states that P&S, the Archdiocese of Philadelphia, and Trinity Health participated in two different enterprises: one engaged in or affecting interstate health care commerce, and one engaged in or affecting legal commerce. (Second Am. Compl. 12, ¶ 73.) Specifically, Plaintiff alleges that the attorneys and hospital executives involved in the prior litigation participated in "Enterprise 2" by submitting falsified documents to the Court. (Id. at 12–13, ¶ 80.) She adds that crimes such as mail fraud, wire fraud, witness tampering, obstruction of justice, and assault took place when the attorneys took these actions. (Id. at ¶¶ 81–82; 13–15, ¶¶ 84–89.) Plaintiff also adds that Alan Davis, Counsel

---

[7] Plaintiff names as Defendants Post & Schell, P.C.; Kate Kelba, Esq.; Cathy Mikus, Esq.; Swartz Swidler, LLC; Joshua Boyette, Esq.; Justin Swidler, Esq.; Derek Smith Law Group, PPLC,; Christopher Booth Street, Esq.; James Patrick J. Griffin, Esq.; Barbara E. Ziv, M.D.; Alan J. Davis; Matthew Weisberg, Esq.; Reginald Allen, Esq.; and Counsel Press, Appellate Firm.

of Pennsylvania's Disciplinary Board, participated in "Enterprise 1" by refusing to investigate the allegedly falsified documents. (Id. at 13, ¶ 83.)

## III. LEGAL STANDARDS

The Court will review the requirements for stating claims under Plaintiff's bases for federal jurisdiction: RICO, the Sherman Act, and the Clayton Act.

### A. RICO

There are three statutory elements of RICO in dispute: (1) "enterprise," (2) "racketeering activity," (i.e. predicate acts), and (3) "pattern."

#### 1. Enterprise

Under Third Circuit precedent, "a viable 1962(c) action requires a claim against defendant 'persons' acting through a distinct 'enterprise.'" Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 268 (3d Cir. 1995). Therefore, a plaintiff "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).

#### 2. Racketeering Activity

Section 1961(1) enumerates various statues, the violation of which can constitute a predicate act and therefore a "racketeering activity" for purposes of RICO. See 18 U.S.C. § 1961(1). Included in the list of offenses are mail fraud and wire fraud, two crimes frequently alleged by Plaintiff. (See, e.g., Second Am. Compl. 12–13, ¶¶ 81–82; 13–15, ¶¶ 84–89, ECF 109 (Dkt. No. 20-4968); Second Am. Compl. 26–28, ¶¶ 224, 226–33, ECF 58 (Dkt. No. 20-4817.)) Under the RICO statue, communications and settlements conducted in judicial chambers, law offices, or court filings cannot be predictive acts. See Impala Platinum Holdings Ltd. v. A-1

Specialized Servs. and Supplies, Inc., 2017 WL 877311, *10 (E.D. Pa. Mar. 3, 2017) (Baylson, J.).

### 3. Pattern

In order to satisfy the statutory requirement of a "pattern of racketeering activity," one "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989) (emphasis omitted).

Related predicates "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 240. "'Continuity' is both a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 241–42. A plaintiff can demonstrate closed-ended continuity of racketeering activities "by proving a series of related predicates extending over a substantial period of time." Id. at 242.

## B. Sherman Act

### 1. Section 1

Under Section 1 of the Sherman Act, a plaintiff must allege "(1) concerted action by defendants (2) that produced anti-competitive effects within the relevant product and geographic markets (3) and that involved illegal conduct or purpose (4) proximately caused injury to plaintiffs." In re Mushroom Direct Purchaser Antitrust Litig., 514 F. Supp. 2d 683, 698 (E.D. Pa. 2007) (O'Neill, Jr., J.) (citing Gordon v. Lewistown Hosp., 423 F.3d 184, 207 (3d Cir. 2005) and Mathews v. Lancaster Gen. Hosp., 87 F.3d 624, 639 (3d Cir. 1996)).

## 2. Section 2

To state a claim for monopolization under Section 2 of this Act, plaintiffs "must prove the required elements against each individual defendant." Id. at 699 (quoting Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n, Inc., 256 F. Supp. 2d 249, 284 (D.N.J. 2003)). The required elements are "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." Id. at 700 (internal quotation marks omitted).

### C. Clayton Act

#### 1. Section 4

To recover under Section 4 of the Clayton Act, a plaintiff must show "(1) a violation of the antitrust laws . . . , (2) individual injury resulting from that violation, and (3) measurable damages." In re Flonase Antitrust Litig., 798 F. Supp. 2d 619, 626 (E.D. Pa. 2011) (Brody, J.) (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311 (3d Cir. 2008)).

#### 2. Section 7

Section 7 of the Clayton Act "prohibits mergers whose effect may be substantially to lessen competition, or to tend to create a monopoly." Harrison Aire, Inc. v. Aerostar Int'l, Inc., 316 F. Supp. 2d 186, 223 (E.D. Pa. 2004) (Baylson, J.). Accordingly, there must be a sufficient causal connection to establish that the violation was a "material cause" of or a "substantial factor" in the occurrence of damage. This requires plaintiffs to allege a causative chain between their injuries which is direct rather than incidental, or which indicates their business or property was within the target area of the defendant's illegal act. See id.; Stokes Equip. Co. v. Otis Elevator Co., 340 F. Supp. 937, 941 (E.D. Pa. 1972) (Ditter, J.).

## IV. DISCUSSION

The Court finds that Plaintiff's federal claims must be dismissed with prejudice for failure to state a claim upon which relief can be granted. The Court will also dismiss all of the supplemental state claims without prejudice.

### A. Defendants' Motions to Dismiss

Citing the rules of law and doctrinal requirements discussed above, Defendants in both cases have moved to dismiss Plaintiff's Second Amended Complaints. Plaintiff has responded in opposition to most of them.

#### 1. RCC's Motion to Dismiss[8] (No. 20-4817)

Defendants contend that Plaintiff has "improperly" attempted to relitigate her failed claims in the prior Doe action. (Mot. to Dismiss 1, ECF 61.) They argue that her Second Amended Complaint fails to state any claim upon which relief can be granted and should be dismissed with prejudice. (Id.) The Court agrees.

Defendants argue that Plaintiff's RICO claim fails to plead properly an enterprise, a pattern, or a violation of 18 U.S.C. § 1962. (Id. at 15.) The Court agrees with this assessment. On the enterprise element, Plaintiff has not pled any structural features—purpose, relationship, longevity—required to allege a distinct existence of an association-in-fact. (Id. at 16.) Rather, she relies on repeated, conclusory "buzzwords" to blindly support her claim. (Id.) On the pattern element, Defendants argue that Plaintiff's vague allegations do not particularize predicate acts, nor demonstrate any continued threat of criminal activity. (Id. at 18–20.) For the violation of § 1962 element, Defendants point out the vague, inconsistent, and confusing manner in which Plaintiff

---

[8] Defendants raised similar arguments in their Motions to Dismiss. For brevity, the Court will cite to the Motion submitted by Trinity Health Corporation Defendants, ECF 61.

frivolously attempts to make a claim under each and every provision for 1962. (Id. at 22.) They also question whether Plaintiff has suffered an injury to her "business or property," a threshold requirement under RICO. (Id. at 1.)

Concerning the antitrust claims, Defendants argue that Plaintiff's antitrust claims must be dismissed because they (1) are time-barred[9]; (2) do not allege an "antitrust injury" as required for standing; and (3) do not allege an injury to her "business or property," within the meaning of § 4 of the Clayton Act. (Id. at 28.)

Specifically, Defendants argue that, apart from being several years late under the limitations period, Plaintiff has not alleged an injury with any link to the merger—her injuries would have occurred even without the merger, and her termination had nothing to do with whether the merger was anticompetitive. (Id. at 29.) Finally, Defendants point out that reputational harm has not been held to constitute an injury to business or property. (Id. at 30–32.) And, even if it did qualify as such, Plaintiff still has not alleged proximate cause between the antitrust violation and her injury. (Id. at 32.) Defendants add that Plaintiff has also failed to plead a "relevant market," as required for claims under § 2 of the Sherman Act and § 7 of the Clayton Act. (Id. at 32–33.) The Court agrees with these points.

### 2. Post & Schell et al.'s Motion to Dismiss (No. 20-4968)

On RICO, the Motion to Dismiss submitted by P&S makes parallel arguments to the Motion to Dismiss filed in the RCC case, as described above. (Mot. to Dismiss 11–29.) Defendants here also make the same threshold arguments that the Second Amended Complaint is

---

[9] The statute of limitations for antitrust claims is four years; Plaintiff alleges the merger was announced in 2013. (Id. at 28–29.)

13

not plausible under the Twombly/Iqbal standard,[10] and that all of the purported claims are barred by the final Order from Doe. (Id. at 7–11.)

In addition to agreeing with the fundamental pleading problems pointed out by Defendants in both cases, the Court emphasizes that it cautioned Plaintiff in earlier Orders to carefully think through many of these issues. (See Order 1–3, ECF 47 (Dkt. No. 20-4817) & ECF 99 (Dkt. 20-4968) (admonishing Plaintiff to articulate carefully different allegations, different defendants, adhere to R. 8(a), and heed the applicable statutes of limitations); Order 1–2, ECF 55 (Dkt. No. 20-4817) & ECF 108 (Dkt. No. 20-4968) (again warning Plaintiff to follow R. 8(a) and 9(b), RICO pleading requirements, and be cognizant of standing requirements.))

Despite two additional "bites at the apple" following her first Complaint, Plaintiff did not follow the Court's instructions and guidance.

### B. Defendants' Replies in Support of Dismissal

Plaintiff ignored several of Defendants' arguments in her Oppositions, thereby waiving those issues. See, e.g., Markert v. PNC Fin. Servs. Grp., 828 F. Supp. 2d 765, 773 (E.D. Pa. 2011) (Kelly, J.) (citing Conroy v. Leone, 316 F. App'x 140, 144 n.5 (3d Cir. 2009) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant in regard to the uncontested issue.")). In each case, Defendants filed a joint Reply in Support of dismissal, responding to affirmative claims made by Plaintiff in her Response in Opposition. (See Reply in Supp. 1 n.1, ECF 133, Dkt. No. 20-4968.) The pertinent arguments are discussed below.[11]

---

[10] See Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).
[11] In both cases, Defendants make materially similar arguments in support of dismissal. For simplicity, the Court will cite to ECF 133, Dkt. No. 20-4968, the Reply in Support submitted by P&S et al.

### 1. Implausibility

Defendants point out that Plaintiff acknowledges she must show that her Second Amended Complaints contains plausible allegations. (Id. at 3.) Even though Plaintiff "vigorously asserts" that she has met the standard, Defendants point to two examples that encapsulate the Complaint's implausibility: (1) Plaintiff's "fanciful allegations" concerning falsified documents, and (2) the "sprawling enterprises" that Plaintiff alleges in support of her RICO claims, as discussed above. (Id.) Defendants also point out that each time Plaintiff raised the falsified documents issue with her lawyers, they withdrew from representing her, citing ethical and professional concerns. (Id. at 5–6 & 5 n.6.)

### 2. Equitable Tolling

Defendants argue that there can be no tolling of the statute of limitations, as Plaintiff alleges, because Plaintiff admitted she knew of the allegedly falsified documents since at least February 2018. (Id. at 9 (citing ECF 109 at 5–6, ¶¶ 21–26 (Dkt. No. 20-4817.))) Because equitable tolling requires a plaintiff to show she was reasonably diligent in attempting to uncover relevant facts, Ms. Gok cannot rely upon this doctrine to save her antitrust claims against the RCC Defendants. As an alternative ground for dismissal, the Court must conclude that Plaintiff's antitrust grounds are not timely.

### 3. Heightened Pleading under Fed. R. Civ. P. 9(b)

Federal Rule of Civil Procedure 9(b) requires that "allegations sounding in fraud be set forth with specificity." (Id. at 9.) In asserting that she has met this standard, Plaintiff relies upon cases such as Craftmatic Securities Litigation v. Kraftsow, 890 F.2d 628 (3d Cir. 1989), Seville Industry Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786 (3d Cir. 1984), and Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96 (3d Cir. 1983). Defendants point out

that "much has changed since 1989," and call into question the applicability of <u>Craftmatic</u> in light of the Supreme Court's newer, controlling decisions regarding the specificity of pleadings in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). Moreover, Defendants argue that even the <u>Christidis</u> court, applying an older standard, still dismissed "the same sort of formulaic pleading that Plaintiff has offered" in this case. (<u>Id.</u> at 10 (quoting <u>Christidis</u>, 717 F.2d at 100.))

## V. **<u>CONCLUSION</u>**

After review of the voluminous pleadings and briefs, this Court concludes that Plaintiff's claims are not plausible, are not supported by sufficient factual allegations, and find no support in Supreme Court or Third Circuit precedent.[12] For the aforementioned reasons, Plaintiff's federal law claims are dismissed with prejudice. Her supplemental state law claims are dismissed without prejudice. An appropriate Order follows.

O:\CIVIL 20\20-4968 Gok v Post & Schell\20cv4817 Memo 4.30.docx

---

[12] Plaintiff's due process claims, although not discussed above, are without substantive merit.